UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC HILTON,

        Plaintiff,                    Civil Case No. 15-10322
                                              Honorable Linda V. Parker

v.

MIDLAND FUNDING LLC
et al.,

        Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [ECF NO. 16] AND RENDERING MOOT PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION [ECF NO. 35] AND MOTION FOR STATUS CONFERENCE [ECF NO. 42]

     In this consumer debt collection matter, Defendants Midland Funding LLC; Midland Credit Management, Inc.; Encore Capital Group, Inc.; and Stillman Law Office (collectively "Defendants") have moved to compel arbitration, based on the parties' underlying contractual agreement. Having reviewed and considered the parties' written submissions in support of and opposition to the motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the motion "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court,

1

Eastern District of Michigan. For the reasons that follow, the Court **GRANTS** Defendants' motion to compel arbitration.

## I. Factual Background

In September 2004, Plaintiff Eric Hilton ("Plaintiff") opened a credit account ("the Account") through Dell Financial Services, LLC ("DFS") to purchase a Dell computer. (Compl., ECF No. 1 at Pg. ID 6.) The financing for the account was provided by CIT Bank and the servicing of the Account was provided by DFS. (Compl., ECF No. 1 at Pg. ID 6.) Plaintiff made payments on the account but subsequently defaulted in 2008. (*Id.* at Pg. ID 7.) The Account was charged off in April 2007 with plaintiff still owing. (Defs.' Mot., ECF No. 16 at Pg. ID 96.) Subsequently, "DFS, as a part of a portfolio of nonperforming account receivables, sold Plaintiff's debt to Midland Funding, LLC." (Compl., ECF No. 1 at Pg. ID 7.). Thereafter, in February 2014, Defendant Stillman Law Office sued Plaintiff in state court on behalf of Midland Funding LLC, on a debt originating with CIT Bank… over four years after default." (*Id.* at Pg. ID 9.) The state court action ultimately reached settlement. (Pl.'s Resp. Br., ECF No. 25 at Pg. ID 225.)

Afterwards, on January 23, 2015, Plaintiff filed this action in federal court asserting that Defendant Midland Funding LLC, acting through Midland Credit Management, and on behalf of Encore Capital Group, Inc. (collectively "Midland Defendants") "impermissibly caus[ed] Stillman Law Office to file a debt collection

2

lawsuit," suing Plaintiff on the Account after the applicable statute of limitations expired. (Compl., ECF No. 1 at Pg. ID 8.) Plaintiff asserts that Defendants engaged in unconscionable collection methods by filing suit on a time barred debt, in violation of 15 U.S.C. §§ 1692e(2)(a), e(5) and e(10) of the Fair Debt Collection Practices Act (FDCPA). (*Id.*) Subsequently, the Midland Defendants filed a motion to compel arbitration. (ECF No. 16.) Shortly thereafter, Stillman Law Office joined in the Midland Defendants' motion to compel arbitration. (ECF No. 17.)

## II.   Applicable Law and Analysis

The Court must determine whether the Arbitration Provision of the Credit Agreement requires this Court to compel arbitration. Defendants assert that by using the Account, Plaintiff agreed to the terms and conditions set forth in the Credit Agreement ("the Agreement") for the Account. (Def.'s Br., ECF No. 16 at Pg. ID 95.) Defendants assert that "one of the terms and conditions Plaintiff agreed to was an arbitration provision that permits [ ] Defendants to elect mandatory, binding arbitration of any claim arising between them and Plaintiff." (*Id.*) Defendants argue that the Federal Arbitration Act (FAA) requires this Court to "stay this action until such arbitration has been had in accordance with the terms of the [A]greement." (*Id.* at Pg. ID 102.)

Plaintiff, in its responsive brief, asserts that the motion to compel should be denied for the following reasons: (1) Defendants have waived their right to

arbitrate; (2) a trial by jury should be had to determine whether the arbitration agreement can be enforced against Plaintiff; and (3) should the Court compel arbitration, the matter should proceed to arbitration as a class action. (Pl.'s Resp. Br., ECF No. 25 at Pg. ID 205–06, 259.)

1. **The Credit Agreement and Arbitration Provision**

   The Agreement provides the following, in relevant part:

   Following is the DELL PREFERRED ACCOUNT CREDIT AGREEMENT that governs the Dell Preferred Account you requested. Please read it carefully…

   **DELL PREFERRED ACCOUNT CREDIT AGREEMENT**

   Offered by CIT Bank and serviced by Dell Financial Services

   **Notice:** This Credit Agreement contains an arbitration provision. Under this arbitration provision, you may be required to settle any dispute with CIT Bank, Dell Financial Services and others through arbitration and not through a court proceeding.

   **Definitions**: In this Agreement, the words "you" and "your" mean the person who applied for Dell Preferred Account. The words "we," "us," and "our" mean CIT Bank, who is the lender. "Account" means your Dell Preferred Account, which will be governed by this Agreement. Dell Financial Services wills service your Account for CIT Bank.

   **Use of Your Account**. Your use of the open-end credit offered pursuant to this Agreement or its use by anyone you authorize, shall constitute acceptance of the terms of this Agreement and the Arbitration provision contained in this Agreement. Your use of the Account also acknowledges that you are of legal age to enter into a binding agreement with us.

(Agreement, ECF No 16-2 at Pg. ID 126, Column 1.)

4

Further, the Arbitration Provision in the Agreement provides the following:

### ARBITRATION NOTICE

**THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE. PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY CLAIM RELATING TO YOUR ACCOUNT MAY BE RESOLVED BY <u>BINDING ARBITRATION</u>. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT, AND ARBITRATION DECISIONS ARE SUBJECT TO VERY LIMITED REVIEW. CLAIMS MAY BE ARBITRATED ONLY ON AN INDIVIDUAL BASIS. <u>IF EITHER PARTY CHOOSES TO ARBITRATE A CLAIM, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIM.</u>**

**Arbitration.** Except as expressly provided herein, any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross claims and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or relationships which result from this Agreement ("Claim") shall be decided upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules and procedures of the arbitration administrator, including any applicable procedures for consumer-related disputes, in effect at the time the Claim is filed.

(Arbitration Provision, ECF No. 16-2 at Pg. ID 127, Column 8.)

Additionally, the terms "we" and "us" are defined in the arbitration provision as follows:

> [ ] CIT Bank and Dell Financial Services, LP, their parents, direct and indirect subsidiaries, affiliates, licensees, predecessors, successors, assigns and any purchaser of the Account or any receivables arising from the use of the Account, and each of their respective employees, directors and representatives. In addition, for the purposes of this arbitration provision, "we" and "us" shall mean any third party providing any products or services to you or us in connection with the Account (including but not limited to any credit bureau, debt collector or merchant, and including their parents, direct and indirect subsidiaries, affiliates, licensees, predecessors, successors and assigns, and each of their respective employees, directors and representatives) if such third party is a co-defendant with us in any Claims asserted by you or if any Claims asserted by you against such third party arise from or are related to the Account or any products or services provided to you or us in connection with the Account."

(*Id.*)

Lastly, the choice of law provision in the Agreement provides the following:

> **Applicable Law.** The laws of the United States of America, including the Federal Arbitration Act, 9 U.S.C. Sections 1-16(the "FAA", and the laws of the State of Utah apply to govern this Agreement and your use of your Account.

(Agreement, ECF No. 16-2 at Pg.ID 127, Column 4.)

### 2. Plaintiff's claims are subject to arbitration

The FAA states that every written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, the FAA requires federal courts to stay an action when an issue in the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel

6

arbitration when one party fails or refuses to comply with the provisions of an enforceable arbitration agreement. *See* 9 U.S.C. § 4; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). Supreme Court cases have found that these provisions "manifest a 'liberal federal policy favoring arbitration agreements.' " *High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 796-97 (E.D. Mich. 2008) (citing *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002).

However, this does not mean that a federal court faced with an arbitration clause must find that it always governs the resolution of a dispute between the parties. *Id.* at 797. "The language of the contract defines the scope of disputes subject to arbitration." *Id.* (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

The four-factor inquiry provided by the Sixth Circuit for examining a motion to compel arbitration is provided below:

> [W]hen considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005).

**(A)     The parties agreed to arbitrate**

Having reviewed the record, it is readily apparent to the Court that the parties agreed to arbitrate. The Agreement states "use of the open-end credit offered pursuant to this Agreement or its use by anyone you authorize, shall constitute acceptance of the terms of this Agreement and the Arbitration provision contained in this Agreement." (Agreement, ECF No 16-2 at Pg. ID 126, Column 1.) Plaintiff concedes in his complaint that he opened a credit account through Dell Financial Services, LLC ("DFS") to purchase a Dell computer. (Compl., ECF No. 1 at Pg. ID 6.) In doing so, Plaintiff consented to the terms of the agreement. Moreover, the Arbitration Provision provides that "any claim, dispute or controversy …shall be decided upon the election of you or us, by binding arbitration pursuant to this arbitration provision." (Arbitration Provision, ECF No. 16-2 at Pg. ID 127, Column 8.) The word "us" includes assigns and purchasers of the account and third parties who provide services to assigns and purchasers of the account. (*Id.*) Plaintiff concedes that "DFS…sold Plaintiff's debt to Midland Funding, LLC," and that "Stillman Law Office filed a suit o[n] behalf of Midland Funding, LLC[.]" (Compl., ECF No. 1 at Pg. ID 9.) Thus, the Midland Funding LLC – and the Midland Defendants – as an assignee and Stillman Law Office as a third party providing services are each subject to the Agreement and the Arbitration Provision. Since the Arbitration Provision explicitly states that "any

8

claim relating to your account may be resolved by binding arbitration…If either party chooses to arbitrate a claim, neither party will have the right to litigate that claim in court or have a jury trial on that claim, or to participate in a class action or representative action with respect to such claim," Defendants – having purchased the Account – have the right to elect arbitration on Plaintiff's FDCPA claim. (Arbitration Provision, ECF No. 16-2 at Pg. ID 127, Column 8.)

**(B)  The scope of the arbitration agreement is broad in scope.**

Plaintiff's sole claim is that he was sued on a time-barred debt in violation of the FDCPA.(Compl., ECF No. 1 at Pg. ID 8.) The arbitration provision provides that "any claim relating to your account may be resolved by binding arbitration." (Arbitration Provision, ECF No. 16-2 at Pg. ID 127, Column 8.) The Sixth Circuit holds that "[w]here the arbitration clause is broad, only an express provision excluding a specific dispute or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 677 (6th Cir. 2003). Thus, given the breadth of the Arbitration Provision, and the fact that there is no express provision excluding Plaintiff's claim, it is clear that Plaintiff's FDCPA claim is suitable for arbitration – an argument asserting otherwise is implausible.

### (C) Congress did not intend for FDCPA claims to be nonarbitrable

With respect to Plaintiff's FDCPA claim, courts in this district hold that Congress did not intend FDCPA claims to be nonarbitrable. *Garcia v. Weltman, Weinberg & Reis Co. of Michigan*, No. 2:13-CV-14362, 2014 WL 1746522, at *4 (E.D. Mich. Apr. 30, 2014). Moreover "[t]he burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id. (citng Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 227 (1987)). Plaintiff has neither raised the issue of congressional intent nor presented any evidence that Congress intended FDCPA claims to be nonarbitrable, and accordingly, Plaintiff has failed to meet his burden.

### (D) The remainder of the proceedings should not be stayed

Lastly, this Court need not stay the remainder of the proceedings pending arbitration, given that it has determined that Plaintiff's sole claim is subject to arbitration.

### 3. Defendants did not waive their right to arbitrate this matter

Plaintiff asserts that because Defendants brought a debt collection action in state court, they have waived their right to arbitrate Plaintiff's FDCPA claim in federal court. (Pl.'s Resp. Br., ECF No. 25 at Pg. ID 232.) This Court turns to *Garcia v. Weltman, Weinberg & Reis Co. of Michigan*, No. 2:13-CV-14362, 2014 WL 1746522, at *5–6 (E.D. Mich. Apr. 30, 2014) for guidance in addressing

Plaintiff's assertion. In *Garcia,* the district court was faced with an argument similar to the argument Plaintiff raises in this matter, concerning whether commencing and participating in a separate state court debt collection action waived a creditor's right to arbitrate unfair debt collection practice claims arising out of the creditor's allegedly improper conduct during the state court proceedings. The district court held the following, in relevant part:

> Even if claims are clearly subject to arbitration, a party's conduct may waive its ability to compel arbitration. "A party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Associates Corp. v. HL Operating Corp.,* 680 F.3d 713, 717 (6th Cir.2012) (citations and internal quotations omitted). "[B]ecause of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred.' " *Id.* (citation omitted); *see also JPD, Inc. v. Chronimed Holdings, Inc.,* 539 F.3d 388, 393 (6th Cir.2008) ("Though we have declined to sharply define what conduct suffices [to establish that a party acted inconsistent with its right to arbitrate], it typically involves a defendant's failure to timely invoke arbitration after being sued or its interference with a plaintiff's pre-litigation efforts to arbitrate. *The strong presumption in favor of arbitration works against finding waiver in cases other than those with the most compelling fact patterns."* ) (citation omitted and emphasis added). Here, Plaintiff claims that Credit Acceptance Corporation "waived the agreement by filing a lawsuit against Plaintiff in state court and obtaining the underlying judgment and later litigating Plaintiff's objections to collect upon the judgment." (Plf's Resp., Dkt. # 14, at 8). The Court disagrees.
>
> It is clear that Credit Acceptance Corporation's suit against Plaintiff to enforce her monetary obligations under the RIC [(the Retail Installment Contract by which plaintiff financed her purchase)] was not clearly inconsistent with the terms of the Agreement to Arbitrate.

11

> First, though not outcome-determinative, the Agreement to Arbitrate's express language allowed Credit Acceptance Corporation to file a debt collection lawsuit *without* waiving its arbitration rights. Stated differently, Credit Acceptance Corporation's acts were *consistent with the terms of the Agreement to Arbitrate.* Second, the issues at play in the state court litigation—did Plaintiff breach the RIC and was Credit Acceptance Corporation entitled to enforce a judgment—are fundamentally different from Plaintiff's unfair debt collection practice claims under the FDCPA and MRCPA. Numerous courts across the country have found that commencing a separate debt collection lawsuit does not, on its own, waive the right to arbitration. *See, e.g., Davisson,* 644 F.Supp.2d at 957 (Credit Acceptance Corporation's filing of a debt collection action in state court under similar arbitration agreement did not waive its right to arbitrate the debtor's counterclaims arising under analogous debt collection practice and consumer protection statutes under Ohio law); *see also Hodson,* 531 F.Supp.2d at 831 (rejecting argument that creditor waived its right to arbitrate a debtor's FDCPA claim arising out of the creditor's successful collection actions in state court and the garnishment of the debtor's wages); *Fidelity Nat. Corp. v. Blakely,* 305 F.Supp.2d 639, 642 (S.D.Miss.2003) (similar); *Schwartz v. CACH, LLC,* 2014 WL 298107, at *3 (D.Mass. Jan.27, 2014) (similar); *Morrow v. Soeder,* 2006 WL 2855024, at *3 (E.D.Mo. Oct.3, 2006) (similar); *Fields v. Howe,* 2002 WL 418011, at *7–8 (S.D.Ind. March 14, 2002) (similar); *cf Kennedy v. Homecomings Fin. Network,* 2006 WL 2983019, at *3 (E.D.La. Oct.17, 2006) (no waiver where arbitration agreement expressly carved out the defendant's ability to file foreclosure actions).

*Garcia v. Weltman, Weinberg & Reis Co. of Michigan*, No. 2:13-CV-14362, 2014 WL 1746522, at *4–5 (E.D. Mich. Apr. 30, 2014).

The Court agrees with the district court's analysis in *Garcia*. While the arbitration provision in *Garcia* contained an explicit "no waiver" clause, the district court correctly noted that the Sixth Circuit holds that this factor is not outcome determinative. *See id*; *Johnson Associates Corp. v. HL Operating Corp.*,

12

680 F.3d 713, 717 (6th Cir. 2012). Of significant importance to this Court's determination that Defendants did not waive , as was the case in *Garcia*, is the fact that the issues at play in Midland Funding LLC's collections effort in state court are fundamentally different from Plaintiff's unfair debt collection practice claim under the FDCPA. Additionally, in Midland Funding LLC's state court action, Midland Funding LLC and Eric Hilton were the only parties in the lawsuit. (ECF No. 25-4.) In Plaintiff's lawsuit, Plaintiff brings his action against parties not initially involved as litigants in the state court action, including: Midland Credit Management, Inc.; Encore Capital Group, Inc.; and Stillman Law Office. (Compl., ECF No. 1.) Thus, this Court is in agreement with the district court's holding in *Garcia*, as well as the numerous other district courts across the nation, and finds that Defendants' participation in a separate state court debt collection action does not waive their right to arbitrate Plaintiff's FDCPA claim arising out of the Defendants' purportedly improper conduct in state court– namely, filing suit on a time barred debt. "[C]ommencing a separate debt collection lawsuit does not [ ] waive the right to arbitration." *Garcia*, No. 2:13-CV-14362, 2014 WL 1746522, at *5.

    Further, as the district court correctly stated in *Garcia*, the Sixth Circuit holds that a party may waive the right to arbitration by engaging in a course of conduct completely inconsistent with reliance on an arbitration agreement or

13

delaying assertion of the right to such an extent that the opposing party incurred actual prejudice. *Shy v. Navistar Int'l Corp.,* 781 F.3d 820, 827–28 (6th Cir.2015); *Johnson Associates,* 680 F.3d at 717; *Hurley v. Deutsche Bank Trust Co.,* 610 F.3d 334, 338 (6th Cir. 2010). "Both inconsistency and actual prejudice are required." *Shy,* 781 F.3d at 828. Defendants have not taken action inconsistent with the right to arbitrate since Defendant's engagement in the state court debt collection action did not waive its right to arbitrate Plaintiff's FDCPA claim. Here, Plaintiff filed this instant litigation and Defendants promptly moved to compel arbitration. Accordingly, since Plaintiff cannot demonstrate inconsistency, his argument fails.

Plaintiff also asserts that Defendants have waited too long to arbitrate, arguing that too much time has passed since Plaintiff's breach of the Account. This reasoning is especially perplexing, given that Plaintiff initiated the lawsuit presently before the Court. As stated previously, and similarly to the Court in *Garcia*, Plaintiff filed the instant litigation and Defendants swiftly moved to compel arbitration. *Garcia*, No. 2:13-CV-14362, 2014 WL 1746522, at *6. Accordingly, Defendants have not acted inconsistently with the Arbitration Provision in the Agreement.

Additionally, Plaintiff argues that waiver can be inferred from Defendants' failure to provide purchase agreements demonstrating the purchase of Plaintiff's debt. This argument is nonsensical, since Plaintiff, in bringing this lawsuit stated in

14

his complaint that "[a]t some point in time, DFS, as a part of a portfolio of nonperforming account receivables, sold Plaintiff's debt to Midland Funding, LLC. "(Compl., ECF No. 1 at Pg. ID 7.) Further, having reviewed the record, the Court is satisfied with the Bills of Sale, affidavits, declarations, and other various documentation provided by Defendants in support of their assertion that Midland Funding LLC purchased the Account from DFS. (*See* ECF No. 16-2.)

### 4. Plaintiff's request for a jury trial is unsubstantiated

Plaintiff asserts that should the Court determine that Defendants did not waive their right to arbitration, a jury trial should be held to determine whether the arbitration agreement actually applies to Plaintiff. This assertion is baseless since Plaintiff concedes that his debt was purchased by Midland Funding LLC, (Compl., ECF No. 1 at Pg. ID 6) and Plaintiff opened the Account to purchase the computer. (*Id.*) "[U]se of the open-end credit offered pursuant to [the] Agreement or its use by anyone you authorize, shall constitute acceptance of the terms of this Agreement and the Arbitration provision contained in [the] Agreement." (Agreement, ECF No 16-2 at Pg. ID 126, Column 1.) Thus, Plaintiff's assertion that the arbitration agreement might not apply to him necessarily fails.

Also, Plaintiff contends in his responsive brief that the arbitration provision does not apply to him since there is no evidence that Plaintiff was sent the agreement, and because there is no evidence that Plaintiff actually signed the

15

agreement. (Pl.'s Resp. Br., ECF No. 25 at Pg. ID 248–49.) This argument is futile. Plaintiff states – in the facts section of his responsive brief –that he previously asserted as an affirmative defense in the state court action that "[t]here is in existence an agreement to arbitrate," between the parties. (*Id.* at Pg. ID 220.) Thus, Plaintiff clearly concedes that there was in existence an Agreement between Defendants and himself, of which Plaintiff was aware, and that this Agreement contained an Arbitration Provision. Since use of the Account constituted acceptance of the terms of the Agreement, and Plaintiff conceded that he used the Account to purchase the computer and subsequently stopped making payments on the account, the Court finds that by financing the computer, Plaintiff was subject to the Arbitration Provision contained in the Agreement. (Pl.'s Resp. Br. ECF No. 25 at Pg. ID 219; Compl., ECF No. 1 at Pg. ID 6; Agreement, ECF No 16-2 at Pg. ID 126, Column 1.)

### 5. **The matter should not proceed to arbitration as a class action**

Lastly, Plaintiff asserts that should the Court compel arbitration, the Court should invalidate the portion of the Arbitration Provision that waives class action arbitration. (Pl.'s Resp. Br., ECF No. 25 at Pg. ID 259.) Plaintiff requests that the Court allow the matter to proceed to arbitration as a class action, even though the agreement contains a class action ban. Plaintiff argues that failure to do so would strip him of his "right" to receive incentive awards from having served as the class

representative in the action. *(Id.)* The Arbitration Provision in the Agreement explicitly provides that:

> It is the intent of the parties to require Claims to be submitted to arbitration on an individual basis only. **Claims subject to this arbitration provision may not be joined or consolidated in arbitration with any Claim of any other person or be arbitrated on a class basis, in a representative capacity on behalf of the general public or on behalf of any other person, unless otherwise agreed to by the parties in writing.**

(Arbitration Provision, ECF No. 16-2 at Pg. ID 127, Column 8.)

Concerning incentive awards, the Sixth Circuit holds the following:

> Our court has never approved the practice of incentive payments to class representatives, though in fairness we have not disapproved the practice either. *See Vassalle*, 708 F.3d at 756. Thus, to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design. And we have expressed a "sensibl[e] fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir.2003).

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013).

Thus, having reviewed the Sixth Circuit's determinations in *Hadix and In re Dry Max Pampers Litig.*, it is blatantly apparent to this Court that there is no "right" to receive incentive awards from having served as a class representative. Therefore, Plaintiff's assertion that he would be denied his right to incentive awards – should the Court enforce the waiver of class action provision in the Agreement – is baseless.

17

Moreover, the United States Supreme Court holds that if an arbitration provision sets forth a waiver of class action arbitration, said waiver is valid and enforceable. *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 466 (2015). Any rule holding otherwise would be inconsistent with and in violation of the FAA. *Id.* (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Plaintiff fails to provide case law demonstrating that the possibility of potentially serving as a class representative, and possibly receiving an incentive award, provides an exception to the enforceability of a class arbitration waiver. Further, this Court in its own research could not locate any such authority. The Court therefore rejects Plaintiff's request for the matter to proceed to arbitration as a class action.

Accordingly, Defendants' motion to compel arbitration (ECF No. 16) is **GRANTED**, thus **RENDERING MOOT** Plaintiff's renewed motion to certify class (ECF No. 35.) and motion for status conference (ECF No. 42).

Further, **IT IS HEREBY ORDERED** that the parties are directed to proceed with arbitration of Plaintiff's claims pursuant to the terms of the agreement to arbitrate.

**IT IS FURTHER ORDERED** that, in lieu of staying the proceedings, this case is **DISMISSED WITHOUT PREJUDICE** to the parties' right to move to re-open this case for entry of an arbitration award or for any other relief to which the

18


parties may be entitled.

                                    s/ Linda V. Parker
                                    LINDA V. PARKER
                                    U.S. DISTRICT JUDGE

Dated: March 31, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 31, 2016, by electronic and/or U.S. First Class mail.

                                    s/ Richard Loury
                                    Case Manager